UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **LABOR READY NORTHEAST, INC.,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**HARBOR MANAGEMENT** )<br>**CORPORATION,** )<br>)<br>**Defendant.** ) | Civil Action Docket No. _____ |

**COMPLAINT**
**(Jury Trial Demand)**

**Introduction**

Labor Ready Northeast, Inc. ("Labor Ready") brings this action for breach of contract and to obtain a declaratory judgment that: (1) Harbor Management Corporation ("HMC") is required to indemnify, hold harmless and pay the defense costs for any and all claims and injuries asserted and/or incurred by Crystal Real (f/k/a Crystal Weyant, f/k/a Crystal Beaudet, now hereinafter referred to as "Real") in the Maine Human Rights Commission Complaint No. E08-0545, dated September 18, 2008 ("MHRC Complaint") and in her demand for arbitration to the American Arbitration Association dated May 7, 2010 ("Arbitration Demand"), including her claims of sexual harassment in violation of the Maine Human Rights Act ("MHRA") and Title VII of the Civil Rights Act of 1964 as amended ("Title VII").

**Parties**

1.  Labor Ready is a wholly-owned subsidiary of TrueBlue, Inc., a Washington corporation with its principal place of business in Tacoma, Washington.

1

2. HMC is a Massachusetts corporation with its principal place of business in the Commonwealth of Massachusetts.

## Jurisdiction and Venue

3. This Court has jurisdiction over Labor Ready's claims pursuant to 28 U.S.C. §§ 1332 and 2201.

4. Venue is proper in the District of Maine pursuant to 28 U.S.C. § 1391.

## Factual Allegations

Labor Ready Northeast, Inc.

5. Labor Ready is a provider of temporary manual labor to businesses.

6. Labor Ready strives to place the "right" person in any particular job. By "right", Labor Ready means a person who is physically able to safely and effectively perform the requirements of the job, has the knowledge and skill requested by its customer, has transportation to the job site and meets Labor Ready's standards of employment.

7. As part of Labor Ready's preparation of an individual for assignment to a customer, Labor Ready provides training in its policies and procedures, including but not limited to Labor Ready's policies regarding non-discrimination, prohibition of both sexual harassment and other forms of harassment and workplace safety. In addition to training on these policies, Labor Ready also maintains and instructs all of its temporary workers on the use of its "Silent Whistle" telephone system (currently known as the "Careline").

8. The telephone number for the Silent Whistle is posted in every branch. The Silent Whistle is available to all permanent employees and temporary employees to make a confidential complaint, including an anonymous complaint.

9. Temporary workers typically come back to the branch each day after the completion of each job assignment. Upon their return to the branch, the temporary worker signs their name to a "Sign Out Sheet" which requires that the worker answer the questions, "Were conditions and assignment at the job site safe?" and "Did you work during this pay period without any work-related injury or illness?"

10. If a temporary employee answers "No" to either of the above two questions, that person is to fill out another form and/or report the situation to that person's Branch Staff.

Harbor Management Corporation

11. HMC is a real estate management company that manages approximately 30 apartment-home communities and several commercial and retail office buildings in Massachusetts, New Hampshire and Maine.

12. One of the apartment-home community facilities that HMC manages is River Valley Village ("River Valley") in Lewiston, Maine, where HMC had six employees. HMC also manages other properties in Maine, in Portland, Bangor, Saco and South Portland.

13. In 2007 and 2008, HMC requested that Labor Ready provide temporary employees to assist HMC with its obligations in managing River Valley.

14. Before assigning a temporary employee to customers such as HMC, Labor Ready requires that the customer execute a service contract, which is captioned "Work Ticket".

15. The Work Ticket contains several contractual obligations between Labor Ready and the customer, in this case HMC.

16. One of the contractual obligations undertaken by HMC in its contract with Labor Ready was that, "Customer agrees to comply with and enforce all applicable employment and

labor laws, including those related to breaks and meal periods, and laws regarding equal employment opportunities and the maintenance of fair labor practices."

17.     Another contractual obligation agreed to by HMC was that, "Customer shall defend, indemnify and hold harmless Labor Ready, its agents, employees and the supplied workers for any and all claims or damages arising out of Customer's violation of employment or labor laws, including without limitation, Title VII, FLSA, NLRA, or failure to accurately report hours worked."

18.     These contractual obligations are critical to Labor Ready as Labor Ready does not have any supervision, knowledge, or control of the jobsite. HMC solely controls the work of the temporary workers under their direction and for the sole scope of their business purpose.

19.     HMC executed a Work Ticket with the above express contractual obligations every day in which it requested temporary help from Labor Ready.  At no time did HMC ever indicate in any manner that it was not agreeing to, did not understand or was limiting in any way HMC's obligations to comply with and enforce all applicable employment and labor laws and to indemnity, hold harmless and defend Labor Ready for any damages claimed or caused by any violation by HMC of any employment or labor laws.

<u>Assignment of Temporary Employees by Labor Ready to HMC</u>

20.     In response to one of HMC's requests for a temporary employee, Labor Ready assigned Real to work for HMC at River Valley.  During that period, Real's supervisor was HMC Manager, Michael LaRoche ("LaRoche").

21.     Labor Ready trained Real on Labor Ready's policies on workplace safety, unlawful discrimination, including sex harassment and how to make a complaint and how to use the Silent Whistle to report any concern or complaint.

22. Real was first assigned as a temporary employee to HMC on April 24, 2008.

23. Real received one-day job assignments to work as a temporary employee for HMC (who assigned her to work at River Valley) from April 24, 2008 through May 13, 2008. After each day's work (until May 14, 2008), Real signed the Sign Out Sheet and answered "Yes" to the two questions referred to in paragraph 9 above that she had not been injured on the job and that the conditions and work assignment at the jobsite were safe.

24. On May 14, 2008, Real reported to her Labor Ready branch manager, Don Hart ("Hart") and also filed a Temporary Worker Investigative ("TWI") Report, alleging that she had been sexually harassed by HMC's Manager, Michael LaRoche.  Although this was Real's first allegation of any kind of misconduct by anyone at HMC, the TWI contains allegations by Real of multiple incidents of sex harassment on May 8, 9, 12 and 13, 2008.

25. HMC employees Gary Baril and Walter Bressette witnessed inappropriate sexual behavior on the jobsite.

26. None of these actions were ever reported to Labor Ready.

27. HMC had a legal duty to advise each of its employees concerning what constitutes sexual harassment, that such actions are prohibited by law and how to and to whom to make a complaint of sexual harassment.

28. LaRoche, as a supervisor at HMC, had a legal obligation to prevent sexual harassment and to report any sexual harassment that he became aware of to the appropriate personnel within HMC.

29. LaRoche, as a supervisor, was obligated by HMC's policies to take all reasonable steps to prevent and to report any sexual harassment by employees he supervised or worked with at River Valley or any other HMC location.

30. LaRoche never reported any sexual harassment of Real to anyone at Labor Ready.

31. On May 15, 2008, Labor Ready called HMC to report Real's claims of sexual harassment by HMC's employee, Michael LaRoche.

32. HMC does not dispute that it did not provide any of the legally-required information on sexual harassment to Real.  Nor did HMC provide Real with a copy of HMC's policies on sexual harassment, including how and to whom a complaint or concern of sexual harassment could be raised within HMC or to the Maine Human Rights Commission.

33. Based on Real's report to Hart and her filing a TWI, Labor Ready immediately commenced a detailed investigation of Real's allegations of sex harassment by HMC employee LaRoche.  At the same time, Labor Ready also stopped assigning any female temporary employees, including Real, to work at HMC.

Real's Complaint to Maine Human Rights Commission

34. On September 23, 2008, Real filed a complaint with the Maine Human Rights Commission alleging that she was subjected to sexual harassment and discrimination by HMC and Labor Ready in violation of Title VII and the Maine Human Rights Act.

35. Real also alleges that other women were subject to harassment and a hostile work environment at HMC.

36. Although HMC had knowledge of the harassment of Real and others, it took no action to prevent such harassment.

37. Had Labor Ready been notified by HMC of LaRoche's and other HMC's employees' sexual harassment of its temporary workers, Labor Ready would have conducted its own investigation and taken appropriate action to ensure that any subsequent assignment to HMC did not result in any sexual harassment.

38. But for HMC's failure to comply with Maine's employment laws requiring training of employees on sexual harassment and the processes and procedures for reporting such harassment, Real would not have suffered any sexual harassment at River Valley.

39. But for HMC's failure to comply with and enforce at River Valley the sexual harassment prohibitions of the MHRA and Title VII, as well as its own policies, Real would not have suffered any sexual harassment at River Valley.

## COUNT I
## Breach of Contract

40. Labor Ready reasserts and realleges all of the allegations contained in paragraph 1 through 39 as if set forth in full herein.

41. HMC did not comply with or enforce either the MHRA's or Title VII's prohibitions against sexual harassment.

42. HMC did not timely or properly undertake an appropriate investigation of the sexual harassment of Real and others.

43. HMC had a legal and contractual duty to properly provide a safe work environment for Labor Ready temporary workers under their supervision, direction and control.

44. HMC had a duty to supervise Real but instead allowed her to be sexually harassed and thus breached its contract with Labor Ready.

45. HMC's failure to comply with or enforce the prohibitions against sexual harassment of either the MHRA or Title VII and other requirements of Maine's laws concerning sexual harassment, and its failure to properly investigate or respond to such sexual harassment was a breach of its contract with Labor Ready.

46.     HMC's failure to provide a safe work environment for Real, that resulted in injuries to Real, was a breach of its contract with Labor Ready.

47.     As a result of HMC's breaches of its contract with Labor Ready, Labor Ready has suffered and continues to suffer substantial cost to defend claims by Real of sexual harassment and possible assessment of damages, including lost wages, punitive and compensatory damages, fines, penalties and attorneys' fees.

48.     HMC is required to pay any such damages and reimburse any costs incurred by Labor Ready as a result of the claims of Real.

## COUNT II
### Breach of the Covenant of Good Faith and Fair Dealing

49.     Labor Ready reasserts and realleges all of the allegations contained in paragraph 1 through 48 as if set forth in full herein.

50.     HMC is legally bound to administer the contract between HMC and Labor Ready for the provision of temporary employees to HMC in good faith and fairly so as not to deprive Labor Ready of the expected benefits of the contract.

51.     HMC has breached its duty of good faith and fair dealing by failing to take appropriate action to assure that there is no, or to reasonably reduce the chances of, physical assault and sexual harassment of the temporary employees assigned by Labor Ready to HMC under such contract.

52.     Without the knowledge or agreement of Labor Ready, HMC entered into a settlement agreement and Pierringer release with Real, with the intent to preclude any right of indemnity or contribution by HMC for any damages that Labor Ready may be required to pay to Real.

53. HMC has breached its duty of good faith and fair dealing by attempting to avoid its obligations to defend, indemnify and hold harmless Labor Ready for HMC's violations of the employment laws, including but not limited to safety laws and the MHRA and Title VII.

54. The damages suffered by Labor Ready as a result of HMC's breaches of its duty of good faith and fair dealing under HMC's contract with Labor Ready are significant and ongoing.

55. Labor Ready is entitled to have all of its costs of defense and any damages, fines or penalties it may be required to pay as a result of the claims of Real reimbursed and paid by HMC

WHEREFORE, Labor Ready requests that this Court:

a. Enter judgment declaring that HMC is required to pay any costs, including reasonable attorneys' fees incurred by Labor Ready in defending against the claims of sexual harassment brought by Real;

b. Enter judgment declaring that HMC is required to pay such sums, if any, which may be awarded to Real on account of her claims of sexual harassment or sex discrimination and any other claims against Labor Ready;

c. Enter judgment declaring that the actions taken by HMC to avoid its contractual obligations to Labor Ready, to defend, indemnify and hold Labor Ready Harmless are a breach of its covenant of good faith and fair dealing, and award Labor Ready such damages as this Court deems appropriate, including but not limited to any costs of defense or any damages awarded to Real on account of her claims of sexual harassment and sex discrimination or any other injuries she may have incurred as a result of working for HMC;

   d. Enter judgment declaring that the Pierringer release entered into by HMC and Real does not affect HMC's contractual obligations to Labor Ready under their contract;

   e. Award Labor Ready its costs, including reasonable attorneys' fees in bringing and pressing this complaint; and

   f. Award Labor Ready such other and further relief as this Court may deem just and appropriate.

             Respectfully submitted,

Dated:  July 9, 2010

             /s/  Richard G. Moon
             Richard G. Moon
             Counsel for the Plaintiff,
             Labor Ready Northeast, Inc.

             VERRILL DANA LLP
             One Portland Square
             P. O. Box 586
             Portland, ME  04112
             (207) 774-4000 (Telephone)
             (207) 774-7499 (Fax)
             rmoon@verrilldana.com